## W. F. ARBUCKLE v. EBEN NELMS.

1. LIEN — MORTGAGE — LANDLORD AND TENANT — ACT OF 17TH APRIL, 1873. — Neither at common law, nor under the statutes, prior to the act of 17th April, 1873, had the landlord a lien upon the agricultural products or the chattels on the premises for his rent.

2. LANDLORD AND TENANT — LIEN OF ACT OF 17TH APRIL, 1873. — This act confers a lien on the landlord, so as to place his rent in kind beyond the power of the tenant for any debt contracted by him. It was designed to give a security on the crop itself, so that it could not be incumbered to the prejudice of the interest of the landlord.

3. SAME — SAME. — A lien upon a crop, created by the act of April 17, 1873, although declared to be a " first lien," is subordinate and inferior to a mortgage or conveyance in trust of the crop previously given. This lien attaches for the benefit of those who cultivate the crop, and are entitled to a share thereof, and also for the landlord's rent, from the date of the passage of the act, as between the parties immediately interested. But not so as to impair any specific incumbrance or lien placed upon the crop before the act went into effect.

4. SAME — CASE IN JUDGMENT. — N. leased to K., on the first of January, 1873, thirty acres of land, for that year, the rent to be paid in cotton. On the 31st of May, 1873, K. executed a mortgage on his crop to A., for supplies, etc. Held, that as the mortgage was not executed until after the passage of the act of 17th April, 1873, it was subordinate to the lien of the landlord created by the act.

ERROR to the Circuit Court of De Soto County. Hon. E. S. FISHER, Judge.

The facts of the case sufficiently appear in the opinion of the court.

*Harris & George,* for plaintiff in error :

The writer of this has stated to the court, in a note appended to a certificate for a re-argument in another case, that it was his conviction that the act of 1873 secured to the landlord a prior lien on the crop when his rent is payable in money, even ; but as that act has never yet received a construction from the court, he asks that the court will give his client the benefit of a contrary construction, should such be deemed right.

In this case there was no contract for any part of the crop raised specifically, but the landlord admitted in his testimony that, if any three bales of cotton, of the requisite quality and weight, were tendered he would be content, though they were not raised on the demised premises.

But the points on which we mainly rely, are these :

1. The contract of renting was made before the passage of the act giving the lien to the landlord ; and there is nothing in it to show that the legislature intended to give the act a retrospective operation. It will not be so construed unless the words used imperatively demand it, or the act can have no other operation. Brown v. Wilcox, 14 S. & M., 127 ; Easten v. Van Dorn, Walk., 214 ; Gayden v. Bates, ib., 209 ; Hooker v. Hooker, 10 S. & M., 599 ; Garrett v. Beaumont, 2 C., 377 ; Carson v. Carson, 40 Miss., 349.

2. To give the statute the effect of operating on the prior contract of leasing, would make it unconstitutional ; for it would be adding to the contract a very important term not embraced in it. When the contract of leasing was made, the lessee came under a personal obligation only for the payment of the rent, and he contracted also for a free and unrestricted ownership of the productions of the soil. This act deprives him of this unrestricted

ownership and power over the crop, and incumbers it with a lien not assented to by him.

*White & Chalmers*, for defendant in error, contended:

1. That Nelms by the terms of his contract of rent had an " interest or share " in the crops of his tenant to the extent of his three bales of cotton, and hence under the terms of the act of April 17, 1873, this "share or interest" could not be incumbered by the tenant to the prejudice of Nelms. And the mortgage being executed by Kidd to Arbuckle a month after the passage of the act of April 17, 1873, is subordinate to the lien created by that act.

SIMRALL, J., delivered the opinion of the court.

Arbuckle, the plaintiff in error, asserts a claim to the three bales of cotton in question, under a mortgage made by Kidd, the 31st of May, 1873, which was filed for record the 2d of June, 1873.

Nelms, the plaintiff in the circuit court, claims the cotton as landlord of Kidd, to whom he had leased 30 acres of lands for the year 1873, the rent to be paid in three bales of cotton, of 500 pounds weight each. The cotton in the seed had been delivered by Kidd to the agent of Nelms. After it was ginned and baled, the three bales were seized by Arbuckle under legal process. It is plain that this is the case of the relation between Nelms and Kidd, of landlord and tenant, Kidd being responsible to Arbuckle for the rent. The former having against him the rights and privileges conferred by law to enforce payment.

We have held in several cases that neither at common law, nor under our statute, does the landlord have a lien upon the agricultural products, or the chattels on the premises for his rent. But it is urged that Nelms has the benefit of the lien provided in the first section of the act of April 17, 1873, p. 79, pamphlet. If so, his right is paramount to that of Arbuckle, under his mortgage of subsequent date.

The last clause of the first section of this act, though obscure

in the language, confers a lien on the landlord, so as to place his rent in kind beyond the power of the tenant for any debt contracted or suffered by him. Apart from this statute the tenant is sole owner of the products of the soil, and could sell absolutely, or mortgage in good faith, so as to give a preference over the landlord. This statute was designed to give a security in the crop itself, so that it could not be incumbered to the prejudice of the "share or interest" of the landlord in it for rent. The landlord has a statutory lien, raised by law to assure to him so much of the crop of cotton, or other product, raised on the demised premises, as has been reserved for rent. This is a limitation on the power of the tenant to incumber the crop. The act of 1873, in connection with that of the 5th of April, 1872, of which it is amendatory, makes it a " first lien."

But it has been pressed by the counsel for Arbuckle in argument, that inasmuch as the lease was made to Kidd the first of the year 1873, he can take no benefit of the lien provided by the statute subsequently passed. We have held at this term that a lien upon a crop raised by the statute of 1872, April 5th, although declared to be a " first lien," was inferior and subordinate to a mortgage or conveyance in trust of the crop, previously given. If the mortgage of Arbuckle was prior to the 17th of April, 1873, (the date of the statute) it would be paramount to Nelms' claim. Must the lien attach at the time the contract of lease was made, or can it take effect where the lease was made before the law was passed?

It would be *ultra vires* of the legislature to interfere with the contract prejudicially, of Nelms and Kidd, made in January, 1873. That contract was, that Nelms should receive, and Kidd should pay, three bales of cotton for the use of the land. The statute does not increase the obligation of Kidd. But in effect, enacts, that hereafter it shall not be lawful for tenants to make contracts, with other persons, touching the crop, which will cripple or hinder the tenant from complying with his promise to his

landlord. In effect, it declares that he shall not, for his debts, incumber the crop, so as to put it out of his power to pay his rent.

It is a limitation put upon the power of disposition which the tenant has over the crop. Arbuckle had knowledge, or (is assumed to have had) at the time he took his mortgage, of this statute. It went into effect a month or more before he acquired his security. He has, therefore, no right or ground to complain of the restrictions of that law for the benefit of the landlord. That statute displaced or affected no specific right which he had.

We are of opinion that the privileges of the statute attached for the benefit of those who cultivate the crops, and are entitled to a share thereof; and also for the landlord's rent, from the date of the passage of the act, as between the parties immediately interested.

But not so as to impair any specific incumbrance or lien placed upon the crop, before the act went into effect. The scheme and purpose of the first section, where land owner and cultivators are interested in the crop, in shares, and where the landlord has reserved his rent in kind, is to hold the entire crop, chargeable with a division, in the first case, into the shares according to agreement. And in the other, with a subtraction and separation from the whole of the part due the landlord for rent. And these several individual rights and interests shall not be affected or injured by the debts, contracts, or incumbrances of each other.

To give immediate operation to the statute would not impair any right Arbuckle had against Kerr, on the 17th of April, 1873. It would seem from the recital in the mortgage, that Kerr was already indebted on an old balance, and would be further indebted for supplies during the year. As to the past indebtedness, if reduced to judgment, a seizure of the tenant's effects, under execution, could not be made without paying one year's rent; that is the whole demand which Nelms had against his tenant.

We think the circuit court reached a right result.

The judgment is affirmed.