## J. F. POWELL *v.* T. C. SMITH.

1. EMPLOYE'S LIEN.    *Agricultural products. Purchaser. Notice. Code* 1892, § 2682.

     The lien of an employe, given by § 2682, code 1892, may be enforced against a purchaser of agricultural products, whether he buys with or without notice.

2. SAME.    *Employe's consent. Burden of proof.*

     In an action by an employe against a purchaser of crops, the burden of proof is not on the plaintiff to show that he did not consent to the sale. (*Warren* v. *Jones*, 70 Miss., 202, explained.)

3. SAME.    *Overseer or manager.*

     An overseer or manager of a farm, who aids by his labor to make, gather, or prepare for sale or market a crop, has a lien thereon for his wages.

4. SAME.    *Waiver.    Note for wages.*

The taking of a promissory note for such wages is not necessarily a waiver of the lien; the question of waiver is one of fact, and the intention of the employe in taking the note may be the subject of evidence, but a direct agreement is not necessary to a waiver.

5. EVIDENCE.    *Writings.    Effect on collateral fact.    Province of judge.*

To interpret the meaning of a writing unaffected by parol testimony is the province of the judge; but its effect as evidence of a collateral fact—as waiver—is for the jury.

6. LANDLORD'S LIEN.    *Code 1892, §§ 2495, 1183, 2682.*

The statutory lien on crops given a landlord by § 2495, code 1892, and those given employers and employes by § 2682, code 1892, are co-extensive and reciprocal.

7. STATUTES.    *Construction.    Argument ab inconvenienti.*

The inconveniences that would result from construing a statute according to its terms cannot be considered as an aid to construction, when its terms are too plain to admit of doubt.

FROM the circuit court of Yazoo county.

HON. ROBERT POWELL, Judge.

T. C. Smith sued J. F. Powell in the circuit court, averring in the declaration that he, the plaintiff, was employed for the year 1892 as overseer and manager of a plantation in Yazoo county called "Gandercleugh," by one Wilson, the owner, and aided by his labor to make, gather, and prepare for sale one hundred bales of cotton thereon in said year; that a balance of $500 was due him by Wilson for his wages; that defendant, Powell, had, without plaintiff's consent, obtained possession of twenty-five bales of the cotton under a deed of trust thereon given him by Wilson, and had converted the same to his own use; that the cotton was worth $25 per bale, and the declaration prayed for a judgment against defendant for the sum due plaintiff from Wilson.    A demurrer to the declaration was overruled in the court below, and the defendant then filed a general traverse of its allegations, and the case was tried on the issue thus made.

On the trial before the jury the plaintiff proved substantially the facts stated in the declaration, but it further appeared that the defendant received all of the cotton raised on the plantation in 1892, most of it having been shipped to him by Wilson. About twenty bales were so shipped for Wilson by the plaintiff himself.  Plaintiff knew of all the shipments, but was unadvised as to the state of accounts between Wilson and the defendant; plaintiff was not asked to consent, nor did he object, to the shipments.  Wilson having failed to pay plaintiff, suggested to him a proceeding against the cotton.  Plaintiff then consulted a lawyer, and was advised that the defendant had the superior right to the cotton.  Being so advised, plaintiff accepted Wilson's note for the $500 balance, payable out of the crop of the following year, 1893.

On cross-examination, the plaintiff testified that the note was received in payment of the sum due him from Wilson.  On his re-examination, he was asked by his counsel, "What agreement, if any, did you have with Wilson at the time the note was taken relating to your lien upon the cotton?"  To this he replied that it was agreed that he did not, by taking the note, release his lien, if he had any, on the cotton.

The plaintiff having rested his case, the defendant moved to exclude all of the evidence, but the motion was overruled.  Defendant came upon the stand as a witness, and, in the course of his examination he was asked by plaintiff if he did not receive the proceeds of the cotton, and he testified that the cotton came to his hands as a factor, and that it was sold for Wilson and credited to his account.

The assignments of error, which are mentioned in the opinion of the court by numbers, were predicated of the rulings of the court in permitting, over defendant's objections, the introduction of testimony showing the agreement between the plaintiff and Wilson that the taking of the note should not be a waiver of the lien on the cotton, in refusing to exclude all of plaintiff's

evidence, and in permitting plaintiff to prove by defendant that he had received the proceeds of the cotton.

The second instruction given for the plaintiff was in these words: ''The court instructs the jury, for the plaintiff, that the mere taking of a note for the balance due him by Wilson will not release any lien that Smith might have on any cotton raised on the Gandercleugh plantation during the year 1892, but that, in order to release said lien, there must have been a direct agreement to that effect.''

A verdict and judgment were rendered in the court below for the plaintiff, and defendant appealed.

*Campbell & George,* for appellant.

The demurrer to the declaration ought to have been sustained. To give a right of action to the plaintiff in this cause against defendant, a factor who sold the cotton for Wilson, would be to extend such right to a large class of persons who are equally, with the plaintiff, within the statute, whose claims would be hard to ascertain, and whose secret liens will tend to reduce the price of our chief crop and be exceedingly detrimental both to the agricultural and mercantile interest of the state. The statute itself nowhere intimates a right of action against one who either purchases the cotton, or who, as a broker or factor, sells the same in open market for the account of the owner. It provides a simple and easy mode of enforcing the lien—the cotton can be followed wherever found and subjected to the payment of the lien. Plaintiff had no right of property in the cotton, but a mere claim on it which did not entitle him to bring an action of trover for it. *Westmoreland* v. *Wooten,* 51 Miss., 825. While the declaration is styled '' trespass on the case,'' it is really in trover against Powell for the seizure and conversion of the cotton, and it is nowhere charged in it that defendant had notice of the lien claimed by plaintiff. The lien given employes by the statute is *pari passu* in its nature with a judgment lien, and it is decided that a judgment creditor,

having a judgment lien, cannot recover the value of property converted. *Dozier* v. *Lewis*, 27 Miss., 679.

In considering the evil consequences of allowing a suit like this to be maintained, it must be remembered that if employes can maintain such a suit, they can do so as long as their debts exist, and none of them would be barred in less than three years.

We think that Campbell, J., announced the true rule in *Wooten* v. *Gwin*, 56 Miss., 422, where he says: "Where a lien is given by law, and a remedy to enforce it, this remedy is exclusive, and if the holder of the lien permits the products to get beyond his reach, that he must bear the consequences of his want of vigilance or own negligence." We do not so argue with the expectation that this court will reverse the several decisions to the contrary in reference to the landlord's lien; the doctrine of *stare decisis* would in all probability prevent; but we do insist that the difficulties which have been encountered in landlord's lien cases, in the decisions of this court, ought to serve as warnings to prevent the extension of the doctrine to employe's liens, a much more numerous class, and fraught with even greater dangers.

The court erred in permitting the plaintiff to testify as to his intentions in taking the note not to waive a lien on the cotton. The question as to whether the taking of the note was a waiver of the lien, was one for the court to decide from the instrument itself. The note recited that it was to be paid out of the crop of 1893. *Parberry* v. *Johnson*, 51 Miss., 291; *West* v. *Platt*, 127 Mass., 372; 28 Am. & Eng. Enc. L., 528, note 4, and authorities cited.

The second instruction was clearly wrong in this, that it announces that a lien cannot be released except by a direct agreement. This is so palpable as to need no extended argument; the mere statement condemns it.

The court erred in not instructing the jury, as requested by defendant, that the burden of proof was on the plaintiff to

show that he did not consent to the delivery of the cotton to appellant.    *Warren* v. *Jones*, 70 Miss., 202.

*John S. Perrin*, for appellee.

This suit was brought on the theory that the lien given by the law to an employe upon the crops which he assisted by his labor to make, gather, and prepare for sale or market, was similar, as regards the rights and remedies of the employe, to the lien given to the landlord for rent and supplies.    Upon demurrer to the declaration, the court below sustained this view of the law..   The first question which arises, and which goes to the foundation of the suit, is whether this view of the court below is correct.    An examination of the statutes giving the respective liens to the landlord and to the employe, together with the decisions of this court upon the statutes, will leave no room for doubt upon this subject.    If analogy counts for aught, and reasoning therefrom is recognized, then there ought not to be any difficulty in arriving at what this court has established as the law applicable to this and similar cases, for but one conclusion can be arrived at—a conclusion so plain that " he who runs may read."    But if we are to go into the field of speculation, as counsel for appellant would have us to do, and theorize upon effects which have never been produced, it is more than probable that we will be involved in "a sea of doubt."    Let us look at the statutes provided in each case. They are found in chapters 72 and 75, of the code of 1892.

There are many points of similarity between them.    Both are statutory liens; each in derogation of the common law; landlord and employe are specially favored by the lawmakers. By the same penal statute, it is made as much a crime to remove the property on which the employe has a lien as it is to remove that upon which the landlord's lien exists.    Code of 1892, § 1183.    The landlord is protected by his paramount lien, not only from an attempt on the part of his tenants to defraud him, but is also protected from the world—even from the laborer,

where the latter contracts with some other than the landlord himself. The employe's lien is equally as broad, and specially so where his contract is made with the owner of the soil. Almost the same words are used in the two statutes, but if there is any difference with regard to their latitude, it is in favor of the employe. In the landlord's · case, these words · are used: "Shall be paramount to all other liens, claims, or demands made upon such products." In the employe's lien, these are the words used: "Shall be paramount to all liens and incumbrances or rights of any kind, created by or against the person so contracting for such assistance, except," etc. Neither lien is required to be recorded or evidenced by any writing. In each case, the statute itself furnishes notice to the world of the existence of the lien. There is scarcely a right or a remedy which is conferred on the landlord by the statute providing for his lien and its enforcement, which is not given to the employe by his lien. Both liens are assignable, and the assignee under each has the same rights and remedies which the assignor had. Indeed, without being identical, it is hardly possible to conceive of two statutes which are more similar in their effect, intent, and extent. Such being the case with regard to the two statutes, why should a different rule prevail in protecting the beneficiaries under them? The question is unanswerable. Let us look, then, at the adjudications of this court respecting them. With regard to the landlord's lien, this court has held, in *Eason* v. *Johnson*, 69 Miss., 371, that the doctrine of *caveat emptor* prevails. In the landlord's lien, nothing is said about the lease being recorded, or as to how it shall be evidenced. In the employe's lien, it is specially provided that said liens "shall exist by virtue of the relations of the parties as employer and employe, and without any writing, or, if in writing, without recording." If, then, in the case of the landlord's lien, where the statute is silent as to how the lease between the landlord and the tenant shall be evidenced, and which is silent as to the necessity of recording the same, if in writing, the doctrine

of *caveat emptor* prevails, with how much more force should the same rule be applied in the employe's lien, of which the statute specially says that the lien shall exist by virtue of the relationship of the parties as employer and employe? Looking at the statutes themselves, it would not be unreasonable for a third party to presume that where the landlord's lien is concerned, one ought to have some sort of notice, either by record or written contract, but the most casual observer could not but see that with the employe's lien no notice of any sort was necessary.

But it is objected that the enforcement of the law in favor of the employe, in the same manner and to the same extent as is done in the case of the landlord, would seriously interfere with the sale and commercial value of the agricultural products which are notoriously produced in this state, and, to this extent, would be against public policy. I deny that such would be the case. Experience has shown that since the enactment of this law in 1872, our agricultural products are sold as readily as before. The objection is based on the ground that every employer is dishonest—a most monstrous proposition. A little investigation will show that most, if not all, of these cases arise, not from the dishonesty of the employer, but from the rapacity and greed of the merchant or other party, who has the employer bound with "hooks of steel," by means of a mortgage or other security, the very parties the lien was intended to protect the employe against. The reasoning of counsel for appellant applies with equal force to the very remedy which they contend ought to have been pursued in this case. But, grant that it is true, and a complete answer to the same is the trite phrase, "*Ita lex scripta est*," and that this court can only expound the law as it is, and cannot refuse to enforce it because, possibly, its effect might be injurious. As is often said with regard to our penal statutes, the best way to get rid of a bad law is for the courts to enforce it strictly. Again, the tendency of modern legislation is to protect employes, to secure to them the

fruit of their labor and to enlarge their civil rights.   The divine declaration that the "laborer is worthy of his hire," has not only been engrafted in the law, but the law goes further, and says that no one shall prevent his receiving the same. Judicial interpretation of the law has gone equally as far. *Buck* v. *Payne*, 50 Miss., 652; *Ib.*, 52 Miss., 271; *Henry* v. *Davis*, 60 Miss., 212; *Fitzgerald* v. *Fowlkes*, 60 Miss., 270; *Cohn* v. *Smith*, 64 Miss., 816; *Newman* v. *Bank*, 66 Miss., 323; *Eason* v. *Johnson*, 69 Miss., 371; *Warren* v. *Jones*, 70 Miss., 202.

Argued orally by *T. H. Campbell*, for the appellant, and by *J. S. Perrin*, for the appellee.

WHITFIELD, J., delivered the opinion of the court.

The demurrer was properly overruled.   This court has held that the landlord may recover the value of agricultural products on which he has the statutory lien, whether the purchaser thereof in open market has notice or not. *Eason* v. *Johnson*, 69 Miss., 371; *Newman* v. *Bank*, 66 Miss., 323.   It follows, inescapably, that the same rule must be applied to the lien of the employe or other person "aiding by his labor to make, gather or prepare for sale or market any crop," etc., and that this lien must be co-extensive and reciprocal with the lien of the landlord.   The statute (§ 1183, code 1892) makes the removal of products subject to the lien, whether of the employe or employer, a crime, and the same crime, punishable alike. The language of § 2682, defining the lien of the employe, is: "Such liens shall be paramount to all liens and incumbrances or rights of any kind created by or against the person so contracting for such assistance, except the lessor of the land . . . for rent or supplies;" and that of § 2495, defining the landlord's lien, is: "This lien shall be paramount to all other liens, claims or demands upon such products."   If there be any difference as to the extent of the two liens, it

would seem that the employe's is the broader. Both are creatures of the statute, neither requiring record, but the statute charging, of itself, all the world with notice of the existence of the lien. Both are assignable, and the assignee under each has the same rights as the assignor had. *Kerr* v. *Moore,* 54 Miss., 286; *Taylor* v. *Nelson,* 54 Miss., 524; *Newman* v. *Bank,* 66 Miss., 323. Section 2683 provides that the employe's lien ''shall exist by virtue of the relation of the parties, and without any writing,'' or record, if written.

In *Buck* v. *Payne,* 52 Miss., 271, it was said that ''the policy of the statute is to make sure to the laborer his wages,'' and, in *Irwin* v. *Miller,* 72 Miss., at page 177, that '' the primary and principal purpose of this section [2682] is to afford security to agricultural laborers,'' in which case the benefit of the lien was extended to a ginner. In view of the fact that our people are mainly agriculturists, and of this unbroken course of legislation and decision, it is impossible to hold that the lien of the employe or other person does not have equal scope with that of the landlord. The inconveniences, real or supposed, to flow from this—the argument *ab inconvenienti*—whatever aiding force they may furnish the construction of statutes of doubtful meaning, can have none at all where the statute is clear and positive. If there be considerations which outweigh the present declared '' policy of the statute,'' in favor of a change to a different one, these are to be addressed to the legislature. We have given the very able and learned argument of counsel for appellant on this branch of the case full consideration, and cannot concur in their view, under our statutes and decisions.

It was proper to permit the plaintiff to explain whether he meant, by taking the note, to waive his lien, under the circumstances of this case. As was said by Gibson, C. J., in *Reynolds* v. *Richards,* 14 Pa. St., 208: ''It follows not that because the evidence was written its effect was to be determined by the court. To interpret the meaning of a writing unaffected by

parol testimony is doubtless the province of the judge," but its effect as evidence of a collateral fact—as waiver, in this case—is for the jury.

The fourth and fifth assignments of error are therefore not well taken. Nor do we think the sixth or seventh assignment well taken. The question of waiver was one of fact for the jury. All testimony illustrative of this intent to waive should be received. And, for this reason, the court should have permitted the testimony that cotton had been shipped to New Orleans with the consent of plaintiff, if such testimony could be made. Waiver is the intentional relinquishment of a known right. 28 Am. & Eng. Enc. L., 526. See, especially, *Montague's Admr.* v. *Massey*, 76 Va., 307, and *Boynton* v. *Braley*, 54 Vt., 92. Counsel for both appellant and appellee misconceive *Warren* v. *Jones*, 70 Miss., 202. It is not the law that the burden of proof is on the plaintiff to show that the cotton was sold or delivered without his consent. The instruction in that case, announcing that proposition, was given below to the party who won, and who could not assign error of it, and what was said in the opinion had no reference to that charge.

Instruction No. 2, given for plaintiff, is at least misleading. If it was meant to announce the rule that, where a promise is accepted in satisfaction and discharge of a former promise, the latter promise must be accepted expressly in discharge of such first promise—in other words, that, under the modification of the ancient rule that a good accord and satisfaction was only made out where there was performance shown, by which modification the latter promise may be sufficient without performance, when, and only when, the latter promise is expressly accepted in satisfaction of the former, it is as to this sound. See *Whitney* v. *Cook*, 53 Miss., 559, and *Pullium* v. *Taylor*, 50 Miss., 551. But, under the wording of the instruction, the jury may have understood that the lien could only be waived in any case by a direct and express agreement. This would be error. Under the peculiar facts of this case, it is impossible to

say that this instruction did not mislead the jury.    We find no other error.    For the error indicated, the judgment is

*Reversed, and cause remanded.*