PATTERSON v. JONES MERCANTILE Co.

[78 South. 294, In Banc.]

BAILMENT. *Lien. Landlord and cotton ginning liens. Waiver.*
   Even though a landlord waived her lien for rent by telling the tenant to have cotton ginned by plaintiff, yet plaintiff waived his lien for ginning when it delivered the ginned cotton to defendant without notifying her that the charges due thereon by her tenant for the ginning thereof had not been paid.

APPEAL from the circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Suit by the Jones-Wilson Mercantile Company against Ethel A. Patterson. From a judgment for plaintiff, defendant appeals.

The appellee, Jones-Wilson Mercantile Company, sued the appellant, Mrs. Ethel A. Patterson, in the justice court for ninety-four dollars, claimed to be due it for services rendered in ginning certain cotton which was raised by appellant's tenants on appellant's plantation. The justice of the peace rendered a judgment in favor of the appellee and the appellant appealed to the circuit court. The case was tried in the circuit court on an agreed statement of facts and under an agreement that the jury be waived, and that the case be submitted to the judge on the law and the facts. There was a judgment in the circuit court in favor of the appellee and from that judgment the appellant appeals to this court.

The agreed statement of facts is as follows:

"It is agreed by both plaintiff and defendant in this case that the account of plaintiff on file in this case is correct in amount, and the work of ginning was done for the parties named therein; that the amount of the charges therefor are reasonable; that no part of said account has ever been paid; that it was all due when suit was brought; and that the parties named in the account for whom ginning was done were tenants at the time of the defendant on her plantation in Madison county, Miss.; that the defendant had no gin on her place, and had made no arrangements for the ginning of the cotton. When defendant took charge of her plantation upon which the cotton ginned was grown, at her mother's death, in 1908, and subsequently thereto, the ginning was done in this way. Plaintiff requested defendant (on account of kinship with some of the officers) to have her tenants gin their cotton at plaintiff's gin, she replied to plaintiff that she could not control her

tenants in their ginning, but would request that they should gin their cotton at plaintiff's gin, and in pursuance of her request so made, she knew that this ginning was done, both in the year in question, and for many years preceding. During all of the preceding years no demand was made upon defendant for the cost of ginning, but the same was paid by the tenants for whom the ginning was done. During all of the preceding years, when the ginning had been completed, and during the year now in question, the cotton as ginned would be shipped by Hal Jones as defendant's representative to her in Jackson, but said Jones was the secretary and treasurer of the plaintiff, with authority to make delivery of this cotton to plaintiff as made. However, plaintiff at the time such shipments were made had no intention whatever of releasing its ginners' lien thereon, if any it had, for the ginning of this cotton, but defendant had no notice whatever (unless given constructive notice thereof by law), when she received such cotton so shipped, of such claim by said plaintiff, and said cotton so shipped was appropriated to the payment of rent due her for the property upon which the cotton was raised, which rent has not been paid otherwise. No demand whatever for any amount claimed to be due was made upon defendant at the time of the delivery to her of this cotton.

"Defendant instructed her tenant as aforesaid to do this ginning, and it was done with her knowledge and consent, as herein set out, but said tenants requested plaintiff to so gin said cotton. That said ginning was necessary to prepare the cotton for market, and that the cotton was appropriated by defendant to pay her rent after it had been ginned as aforesaid. The amount, if any, due plaintiff on this account is ninety-four dollars, with interest at six per cent, from date of ginning. Certain tenants paid direct for their ginning and these amounts are not charged in this account."

"This agreed statement of facts shall be used upon appeal to the supreme court just as though the same had been regularly noted by the official stenographer and embodied in the record."

The appellee contends that it has a ginner's lien, and the appellant contends that she has a landlord's lien on this cotton, and each contend that their lien is superior to that of the other.

*Green & Green,* for appellant.

We make two propositions: (1) The statute is conclusive under our judicial decisions. (2) Any lien which plaintiff might have had was lost under the conduct of the business.

Point one.—Sec. 2832. "Lien of Landlord. Every lessor of land shall have a lien on the agricultural products of the leased premises, however and by whomsoever produced, to secure the payment of the rent and of the money advanced to the tenant, and the fair market value of all advances made by him to his tenant for supplies for the tenant and others for whom he may contract, and for his business carried on upon the leased premises; and this lien shall be paramount to all other liens, claims or demands upon such products. And the claim of the lessor for supplies furnished may be enforced in the same manner and under the same circumstances as his claim for rent and proceedings under it shall be applicable to a claim for supplies furnished, and such attachment may be levied on any goods and chattels for rent, as well as on the agricultural products."

This section is express and declares: "This lien shall be paramount to all other liens, claims or demands upon such products."

Section 3042, which is a predicate of the alleged right of the plaintiff, contains this express exception: ". . . And such lien shall be paramount to all liens and incumbrances or rights of any kind created by or

against the person so contracting for such assistance except the lien of the lessor of the land on which the crop is made for the rent and supplies as provided in the chapter on Landlord and Tenant.''

We have here an express statutory declaration of the relative rights of the parties, and there is no dispute about the fact that defendant would go unpaid of her rent unless this cotton had been so appropriated. There is no proof that plaintiff could not have collected from the tenants and could not have realized, under the lien given by section 3042, on the cotton seed and other cotton which it might have ginned; but plaintiff says that there are three decisions in Mississippi under which it becomes entitled to recover:

First, *Strauss* v. *Bailey,* 58 Miss. 136, but that decision is in nowise in conflict with the contention which we make; second, counsel rely upon *Duncan* v. *Jayne,* 76 Miss. 133.

We have made an examination of the original record in this case, and the subordination of the landlord's lien occurred in virtue of affirmative acts which were done by Jayne. There, the landlord urged the ginner to do the ginning, and, having done so could not claim that his act had any other effect than causing that to be done which he had urged to be done.

The original record shows that every time he saw the ginner he jogged him up to get the ginning done; and the court will see, in the opening brief of Mr. Wynn, that he says: ''Duncan had as statutory lien (*Irwin* v. *Miller,* 72 Miss. 174), superior to every other lien, unless it was inferior to that of Jayne. But I insist that the conduct of Jayne was such as to operate as a waiver of priority in favor of Duncan.''

The question in that case was as to a waiver of the landlord's lien in favor of the ginner. There is no comparison of the relative rights of a ginner and a landlord or the subordination of the landlord's lien,

to the ginner's lien in that case. In the suggestion of error it is true counsel attempted to make that question, but the court ignored it, because the orginal right presented no such issue. *Scroggins* v. *Foster,* is not referred to by counsel for obvious reasons, but this is not the only opinion which bears upon this precise point.

In *Goodwin* v. *Mitchell,* 38 So. 657, a case not officially reported, Mr. JUSTICE Cox said: "Whatever lien Bacot & Co., may have had therein, if any, was subordinated to the lien for rent, and no claim based thereon could have prevailed against appellee. The last case relied upon is *Brumm* v. *Dale,* 67 So. 659, and has no reference to the statutes in question.

Let it be carefully noted that this is an action under section 3042, for a conversion of the cotton by the landlord who received it in virtue of the proceedings begun under section 2832. We contend that our rights are decisively fixed under *Irwin* v. *Miller,* 72 Miss. 177, where there was a controversy between a deed of trust and a lien under section 2682, which is the same as section 3042.

This decision has never been overruled and appellant's counsel, in *Duncan* v. *Jayne,* admitted the correctness of the decision, but sought to overturn it by the conduct of the landlord in that particular case.

In *Trenholm* v. *Myles,* 102 Miss. 842, the landlord's lien was held to be paramount and was given effect. See also, *Applewhite* v. *Nelms,* 71 Miss. 482; note, also, *Langford* v. *Leggitt,* 99 Miss. 272; *Irwin* v. *Miller; Ball* v. *Sledge,* 82 Miss. 756.

The extent of the lien of the plaintiff is also shown by *Lumley* v. *Thomas,* 65 Miss. 97, and it was held that the lien of one so working arose under section 1360 of the Code, which corresponds with section 3042 of the Code of 1906. *Weise* v.*Rutland,* 71 Miss. 936.

We insist squarely upon the terms of section 2832 of the Code which says, that our lien is a paramount lien and section 3042 says, that the ginner's lien is an inferior lien to our lien, and we respectfully submit that there is not a decision to be found on the books in which the landlord was held to have wrongfully taken cotton, when that cotton was due as rent by a tenant, which tenant has made a contract to have his cotton ginned by a ginner, and which such ginner ginned under a contract, not with the landlord but with the tenant, and not only ginned for the tenant, but collected, during a period of nearly ten years, every year from these tenants and made no demand whatever, and not only this, but in the instant case, delivered to the landlord the cotton as rent and the landlord received the cotton as rent and had not made upon her demand for any sum whatsoever as ginning charges at the time that the delivery was made.

We therefore submit Point Two.—Plaintiff delivered this cotton to the representative of defendant, who, as its secretary and treasurer, had full authority to make the shipment, and did ship this cotton to defendant, as her rent cotton and made no demand for any ginning charges at the time of the delivery to her of the same.

Now, in the first place, in the case of *Jayne* v. *Duncan,* the ginner held to the cotton and was in possession of the cotton at the time of the suit and in virtue of his possession, made the demand which was allowed.

There is no agreement in this record that the tenant had to deliver the cotton baled, and, for aught there appears, the tenants could, if they had seen fit, deliver the cotton in the seed and have satisfied thereby the contract of leasing.

But these points are beside the issue. Here, the ginner has parted with his possession and sues the landlord for receiving as rent, cotton to which he was entitled under section 2832.

The shipment was made in this case by the plaintiff, acting through an agent who had full authority to make the delivery. There is no question made but that the delivery was good and valid, and it was a part of the trade that the cotton so ginned should be delivered to the defendant, and it was so delivered.

In *Cohn* v. *Smith,* 64 Miss. 821, the court said: "But if the sale was made by the tenant at the time when he was authorized to sell by the landlord, no right of hers was violated thereby and no cause of action arose against the purchaser. The statute only imposes the penalty when the disposition of the property is without the consent of such person" "*Volenti non fit injuria.*"

Here the ginner made the delivery and by making delivery, lost his right in the premises. In *Stewart* v. *Flowers,* 44 Miss. 520, the court held, that by making a delivery the lien was lost. In *McCormiɔk* v. *Blum,* 75 Miss. 83, there was a shipment by the employee to the party who received it, and it was held incompetent to attempt to claim the lien under section 2682, which is section 3042:

"Waiver. Where the manager of a plantation shipped cotton produced thereon under his management, to be sold in the market of a neighboring town, he waives his lien as an employee under section 2682, Code 1892, and cannot maintain a suit for a conversion of the cotton against a factor who had received the cotton of the consignee and sold the same, and applied the proceeds to the credit of the plantation or to that of the owner."

But it may be said that there was no intention to waive this lien; but the proposition is not what its intention was, but what was done by the actual shipment of the cotton to the defendant. Certainly, in the Blum case, there was no intention upon the part of the overseer to waive his lien, because had he intended so to do, he would not have later sued; so, here this party having actually made the delivery did not intend to waive his

rights, but, having done that which waived them, his secret intention was wholly ineffective. See, also, *Railroad* v. *George*, 82 Miss. 724; *Shingleur* v. *Compress Co.*, 78 Miss. 878; *Seevey* v. *Godboldt*, 99 Miss. 113; *Bedford* v. *Gartrell*, 88 Miss. 429; *Flowers* v. *Moise*, 95 Miss. 175.

Wherefore, defendant having received this cotton from the plaintiff, under a shipment made by the plaintiff to the defendant, and this shipment having been made by the plaintiff to the defendant, and this shipment having been made voluntarily there was an end of his lien upon the part of plaintiff so shipping, because the shipment was made to the defendant, so that she might apply said cotton to the payment of her rent and said payment having been thus made, the plaintiff is estopped by shipping this cotton, not only one year, but for ten years, and allowing defendant to receive it, or own it under the impression that there was no demand existing against it, and then, all of a sudden, without notice when the delivery had been made in the same form as it had been made for years to turn in and demand that the ginning be paid by the landlord who had the paramount lien, would be, we submit, the height of injustice.

We confidently ask that the judgment be reversed and the suit dismissed.

*Powell & Featherston,* for appellee.

In this case, as the court will see, there is an agreed statement of facts. This claim of plaintiff is for the cost of ginning and baling cotton which was raised upon the premises rented from the defendant, Mrs. Ethel Patterson, who appropriated the same for the payment of her rent, and all the cotton so ginned was taken for this purpose; it is agreed that the ginning was necessary for the common good of all parties and

was necessary to prepare the same for market, and the contention is that this being true the ginners had the first lien upon the cotton and the defendant having appropriated the same was responsible to us for the cost of ginning.

We refer the court to the case of *Strauss v. Bailey,* 58 Mississippi, at the top of page 138; this case decides that where the charges for work done was for the good of all parties and was absolutely essential in order that the crop might be made available to those interested, such charges must be paid no matter by whom the work is done since such work accrued to the owner's benefit. In the case of *Cox.* v. *Martin,* 75 Miss. 237, bottom of the page, the court says this crop so far as necessary expenses so incurred, since they are for the common benefit of all, may be recovered as a privilege claim no matter by whom incurred if he be a party in interest. *Cox* v. *Martin,* 75 Miss. 238; *Farley* v. *Hard,* 45 Miss. 96.

In the case of *Dunaan* v. *Jayne,* 76 Miss. 133, which was a contest between the landlord and the ginner, the court says: 1. Agricultural Liens, Ginner, Landlord and Tenant.—The owner of a cotton gin and press, who gins and bales cotton, furnishing the bagging and ties, and who is paid therefor by the tenant, in cotton raised on the leased premises, is not liable to the landlord, whose rent is unsatisfied, for the value of the cotton so received in payment, there being no gin and press on the leased premises, and the landlord's contract contemplated that the tenant would gin and bale the cotton.

2. Same: Ginner's Superior Lien.—The ginning and baling of cotton being for the common good of all interested parties, the ginner who renders services at the employment of a tenant, has a lien thereon superior to all other liens for his services, where its prepara-

tion for market is not otherwise provided for by the landlord or other interested party.

The court will see from the agreed statement of facts that all of the conditions required under this decision are met in the instant case, and the court will further see from the brief of General Sterling who represented the landlord in that case, that the same points were made for the landlord as are made by opposing counsel for the landlord in this case.

But, defendant contends that having parted with the possession of the cotton in this case that we thereby lost our lien and any right we might have in the premises. In reply to this contention we say that this court has held that the landlord may recover the value of agricultural products on which he has the statutory lien whether the purchaser thereof in open market has notice or not. *Eason* v. *Johnson,* 69 Miss. 371; *Newman* v. *The Bank,* 66 Miss. 323. It follows inescapably that the same rule must be applied to the lien of the employee or other person. "Aiding by his labor to make, gather or prepare for sale or market any crop." In this case the crop had gone into the hands of third parties. *Powell* v. *Smith,* 74 Miss. 150.

We call the court's particular attention to the case of *Powell* v. *Smith,* 74 Miss. 142, where the court held that an overseer who has given his labor to prepare his crop for market has a lien thereon against the purchaser even though he delivered the cotton himself to such purchaser unless he intended to waive his lien by such delivery, and in this case it is expressly agreed that while we did deliver the cotton to defendant there was no intention on our part to waive any of our rights.

We contend that under this decision our labor as ginners having been necessary to prepare the cotton for market and being for the common good of all, constitutes a superior claim even to that of the landlord whose

part was enhanced by our labor and who would lose nothing by the payment of our claim.

We further contend that under the authorities cited above that this claim is broader than the common-law lien and that under it we can hold the landlord for the payment of the same. We further contend that the defendant landlord having made no provisions for the ginning of the cotton on her place and having no gin thereon and knowing it would be ginned upon our gin and the ginning of the cotton being absolutely necessary to prepare the same for market and being for the benefit of all parties, that therefore the tenants of the defendant by operation of law became her agents to have the ginning done and that their act in so doing was her act and binding upon her in law.

Our court in the case of *Broom & Son* v. *Dale & Son,* 109 Miss. 64, held that where the vendee of an automobile who bought with the reservation of title in the vendor, had the automobile repaired and such repairs was necessary, in such case the vendee had an implied authority from the vendor to have the work done and the mechanic had the first lien.

In this case if the tenants had the implied authority from the landlord to have the ginning done and they must have had it, because it was necessary to have the ginning done in order to market the cotton, then the landlord was bound for such ginning irrespective of any lien whatever.

In a Nut Shell.—If the landlord could recover the value of rent cotton from an innocent purchaser because of his landlord's lien, and this is held by all of the authorities, and if the overseer can recover the value of the cotton from a party to whom he has delivered the same for the landlord as is held in the case of *Powell* v. *Smith,* 74 Miss. 150, then why cannot the ginner whose lien is superior to both

of these, as held in the case of *Duncan* v. *Jayne,* 76 Miss. 133, recover of the landlord the proceeds of the cotton ginned.

Smith, C. J., delivered the opinion of the court.

Assuming for the sake of the argument that appellant waived her landlord's lien on the cotton, under the rule announced in *Duncan* v. *Jayne,* 76 Miss. 133, 23 So. 392, appellee must also be held, under the rule applied in *McCormick* v. *Blum,* 75 Miss. 81, 21 So. 707, to have also waived its ginner's lien when it delivered the cotton to appellant without notifying her that the charges due thereon by her tenants for the ginning thereof had not been paid.

*Reversed, and judgment here for appellant.*

Stevens, J. (dissenting). I dissent from the opinion of the court. The judgment appealed from, in my opinion, should be affirmed. The opinion of the court produces a situation that is unique. The real conclusion of the court is that both the landlord and the ginner waived their liens, and necessarily this waiver was done one for the other. Our court, in *Powell* v. *Smith,* 74 Miss. 142, 20 So. 872, expressly held that:

The ginner's lien as to all third parties "must be coextensive and reciprocal with the lien of the landlord. . . . Both are creatures of the statute, neither requiring record, but the statute charging, of itself, all the world with notice of the existence of the lien. Both are assignable, and the assignee under each has the same rights as the assignor had."

It was expressly held in *Irwin* v. *Miller,* 72 Miss. 177, 16 So. 878, that our statute which gives to agricultural laborers or employees lien upon the crops operated in favor of the ginner, and our court has theretofore declared the policy of the statute to be "that the laborer

is worthy of his food." But the landlord, it must be
conceded, first has the paramount lien, and so it is that
both landlord and ginner are awarded liens. Of course,
either could waive his lien, and under the authority
of *Duncan* v. *Jayne,* 76 Miss. 133, 23 So. 392, the land-
lord in this case waived his lien in favor of the ginner.
The Duncan Case, then, unless overruled, controls the
present case. The court does not overrule the Duncan
Case, and does not question the soundness of the opinion
therein. It appears that the Duncan Case was maturely
considered, and the opinion delivered by a great judge,
who, in speaking for the court, among other things,
said:

"The ginning and baling of the cotton was necessary
to prepare it for market, and, with no gin on the
leased premises, it could not have been expected by
the lessor that the tenant would gin and bale the same
without incurring a charge therefor, and the lessor,
under the circumstances, must be taken as consenting
to its payment out of the crop grown by the tenant."

And, further, the ginning and baling was "for the
common good of all the parties interested," and, the
work being absolutely necessary, the ginner's charges
constitute "a lien upon the crop superior to all other
liens, whether of the lessor or others." A suggestion
of error was filed in that case strenuously putting for-
ward the words of the statute declaring the landlord's
lien to be "paramount to all other liens, claims, or
demands upon such products," and that there was a
special exception in awarding employees a lien in favor
of the lessor of the land. This suggestion of error was
promptly overruled. I do not question the soundness
of the court's reasoning in that case. If the owner
of the plantation stipulates that his rent shall be
paid in lint cotton, and does not provide a gin upon
the leased premises, he knows in advance that the ten-
ants must haul their cotton away from the leased

premises to an independent operator of a gin, and there have the cotton ginned and baled and made available to all parties interested. In doing this work the ginner is in reality working as much for the landlord as he is for the tenant. In the present case there is no dispute about the facts that the landlord made no provision for the ginning on the leased premises; that she requested her tenants to have their cotton ginned at the plaintiff's gin; that the ginning "was done with her knowledge and consent;" that the "ginning was necessary to prepare the cotton for market"; and that the cotton was appropriated by the defendant to pay her rent after it had been ginned." So it is that under the Duncan Case the landlord unquestionably waived her prior lien in favor of the ginner.

Did the plaintiff company, as ginner, waive its lien? If it did waive its lien, the waiver certainly was not in favor of a third party. Here the landlord, who had already waived her lien, received the cotton from the ginner. If the landlord had already waived her lien in favor of the ginner, how could it be said that the ginner, by turning over the baled cotton to the landlord, thereby waived the ginner's lien? It is unnecessary for the ginner to hold the cotton to preserve his lien. The ginner can recover from any one who has appropriated the cotton subject to the lien. All the ginner did here was to turn the cotton over to the party entitled to the possession. It was not the ginner's cotton, and the ginner should not be condemned for turning the cotton over to the party entitled thereto. *McCormick* v. *Blum,* 75 Miss. 81, 21, So. 707, relied on in the opinion of the court, has no application to this case. There the manager, who sued for the appropriation of the lien, was denied recovery because he himself shipped the cotton "from that plantation to the market of Greenville, and for the purpose of

being sold in that market.'' He himself was an active agent in placing the cotton upon the open market, and thereby in having the rights of innocent parties involved. Our court in *Powell* v. *Smith, supra,* expressly stated that ''waiver is the intentional relinquishment of a known right.'' The agreed statement here says that the ''plaintiff at the time such shipments were made had no intention whatever of releasing its ginner's lien thereon.'' The cotton was shipped to the landlord herself, and there was no act or statement by the ginner in addition to the bald fact of shipment by the ginner of the baled cotton to the landlord whereby waiver can be inferred. The landlord was not made to change her position to her hurt or damage. When the cotton was received by the landlord, she admittedly received it without any lien paramount to that of the ginner, for the simple reason that she had already waived that paramount lien. She does not stand in the shoes of an innocent purchaser in open market; and so it is that by the opinion of the court an anomalous situation is produced whereby one lien is waived in favor of the other and both made to neutralize one another.

If we follow precedent—previous decisions of our own court—this case must be affirmed.